IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| JASON AND DEBRA OBESTER | ) | |
| Husband and Wife; | ) | |
| GREG AND STEPHANIE SMITH | ) | |
| Husband and Wife; | ) | |
| GUS AND TRACEY SKINNER | ) | |
| Husband and Wife; | ) | |
| CHARLES J. POZIMBKA | ) | |
| An individual; | ) | |
| HUNTER-TUNNELL BRANSON | ) | |
| INVESTMENTS, LLC, an Arkansas LLC; AND | ) | |
| ELAINE BASTL | ) | |
| A Single Person, | ) | |
| | ) | Case No. |
| Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | JURY TRIAL DEMANDED |
| | ) | |
| BOUTIQUE HOTEL DEVELOPMENT | ) | FEDERAL CLASS ACTION |
| COMPANY, LLC dba HILTON PROMENADE | ) | COMPLAINT FOR: |
| AT BRANSON LANDING, a Missouri LLC; | ) | |
| | ) | (1) VIOLATION OF§12(a)(1) OF |
| | ) | THE SECURITIES ACT OF 1933; |
| PROMENADE DEVELOPMENT COMPANY, | ) | |
| LLC, a Missouri LLC; | ) | (2) VIOLATION OF §12(a)(2) OF |
| | ) | THE SECURITIES EXCHANGE |
| | ) | ACT OF 1933; |
| HILTON WORLDWIDE, INC., a Delaware | ) | |
| Corporation; | ) | (3) VIOLATION OF §10(b) OF |
| | ) | THE SECURITIES AND |
| HCW, L.L.C., a Missouri LLC; | ) | EXCHANGE ACT OF 1934; |
| | ) | |
| BLR DOWNTOWN REALTY, L.L.C., a Missouri | ) | (4) VIOLATION OF R.S.Mo. |
| LLC; | ) | §409.003-301; |
| | ) | |
| THE BRANSON LANDING MASTER | ) | (5) VIOLATION OF R.S.Mo. |
| ASSOCIATION, INC., a Missouri non-profit | ) | §409.005-501 |
| Corporation; | ) | |
| | ) | (6) VIOLATION OF R.S.Mo. |
| HCW MANAGEMENT CONSULTANTS, L.L.C., | ) | §407, et seq. |
| a Missouri LLC | ) | |
| | ) | (7) FRAUDULENT |
| HCW DEVELOPMENT COMPANY, LLC; | ) | MISREPRESENTATION |
| | ) | |

1

|                 |   |                           |
|-----------------|---|---------------------------|
| Defendants.     | ) | (8) NEGLEGENT             |
|                 | ) | MISREPRESENTATION         |
|                 | ) |                           |
|                 | ) | (9) FRAUD IN THE          |
|                 | ) | INDUCEMENT                |
|                 | ) |                           |
|                 | ) | (10) FRAUDULENT           |
|                 | ) | CONCEALMENT               |
|                 | ) |                           |
|                 | ) | (11) BREACH OF FIDUCIARY  |
|                 | ) | DUTY                      |
|                 | ) | (12) VIOLATION OF R.S.Mo. § |
|                 | ) | 448-002.106, et. seq.     |

## FEDERAL CLASS ACTION COMPLAINT

COME NOW, Plaintiffs, COME NOW, Plaintiffs, Jason and Debra Obester, Greg and Stephanie Smith, Gus and Tracey Skinner, Charles J. Pozimbka, Hunter-Tunnell Branson Investments, LLC and Elaine Bastl who bring this action on behalf of themselves, and on behalf of all similarly situated persons (collectively "Plaintiffs"), against Defendants, Boutique Hotel Development Company, LLC dba Hilton Promenade at Branson Landing, Promenade Development Company, LLC, Hilton Worldwide, Inc., HCW, L.L.C., a Missouri limited liability company, BLR Downtown Realty, LLC, a Missouri limited liability company, HCW Development Company, LLC, a Missouri limited liability company, The Branson Landing Master Association, Inc., a Missouri non-profit corporation, and HCW Management Consultants, L.L.C., a Missouri limited liability company, and allege, based upon information and belief, except where otherwise stated as follows:

## NATURE OF THE ACTION

1. This Complaint involves a scheme among the Defendants by which Plaintiffs were illegally and fraudulently induced into purchasing the air rights to condominium-hotel

room units as investment securities (the "Securities") as the Branson Landing Hilton Promenade Boutique Hotel in 2005, 2006, 2007 & 2008.

2. The project is referred to as the Hilton Promenade Boutique Hotel.

3. Plaintiffs all acquired these Securities beginning in 2005 with the transfer of the title of the Securities from Defendants to Plaintiffs without first registering the certificate of sale of the Securities as a security as required by law and without being exempt therefrom. The air rights to the hotel condominium units are securities because:

   a. The condominium unit value is entirely dependent upon the success or failure of the Branson Landing enterprise;

   b. Defendants' sales promotions of the investment in the hotel room reasonably lead to the understanding that a valuable benefit, over and above the initial payment for the physical air rights to the hotel room, would accrue to the Plaintiffs as a result of the operation of the hotel as a Hilton branded enterprise pursuant to the Hilton nightly rental program; and

   c. Plaintiffs, as owners of shares in the enterprise, by investing with the Hilton rental program, did not receive and did not wish to receive any right to manage or exercise control over the decisions of the Hilton enterprise.

4. Plaintiffs' sales were completed when each Plaintiff provided the entire amount paid for the condominium hotel units at the Hilton Promenade Boutique Hotel and closed the purchase in the Hilton branded enterprise with the transfer of title to the Securities from Defendants to Plaintiffs. Defendants used both inside and outside sales teams to sell these Securities.

3

5.  The Defendants' marketing of the Securities omitted material facts and represented that the Securities would generate a substantial amount of revenue to each purchaser. Defendants, through their sales teams, gave sales presentations to potential purchasers which heightened purchasers expectations of a substantial economic benefit of the net rental income to be made from the Securities branded as the Hilton Promenade Boutique Hotel through the Hilton Rental Program. The sales presentations used written material along with sales discussions that presented, *inter alia*,;

    a.  a booklet containing occupancy projections, competitive comparisons with other hotel rentals, as well as income projections based on occupancy projections;

    b.  a projection of anticipated rental rates of the Securities branded as Hilton hotel rooms;

    c.  competitive comparisons of rental income projections of the Securities branded as Hilton hotel rooms as compared to similar hotel rooms in the area; and

    d.  projections of future occupancy rates of the Securities branded as Hilton hotel rooms.

    Defendant's representations were not limited to offering the rental program as part of the Hilton Promenade Boutique Hotel enterprise but Defendant's marketing strategy based the sale of the Securities as part of the Hilton Promenade Boutique Hotel enterprise's goal, to generate a revenue split for investors by using the Hilton rental program to rent the Securities while intentionally omitting material facts to Plaintiffs.

6.  The portions of Defendants' marketing scheme that emphasized the economic benefit from the rental of the Securities as represented by the Hilton branded hotel rooms as part of the Hilton Boutique Hotel enterprise went above and beyond simply mentioning that a

rental program was offered by Defendant. These rental revenue discussions along with written representations were the centerpiece of the sales presentation and took place as part of the offering and sale. The Plaintiffs' decision to enter into the Hilton branded hotel room rental program was not reached independently of the decision to purchase the Securities, as the Hilton branded hotel room rental program was an integral part of the purchase of the Securities. The Hilton branded hotel room was part of the Hilton Boutique Hotel enterprise and was represented as such by the Defendants.

7.  In order to purchase the Securities, the Plaintiffs individually entered into investment contracts with the Defendants whereby Plaintiffs agreed to pay to Defendants a certain sum for the Securities at the closing, at which point the Securities were transferred to Plaintiffs.

8.  The amounts Plaintiffs paid to purchase their Securities were subjected to the risks of the Hilton Promenade Boutique Hotel enterprise to rent the rooms at a projected rate for a projected number of days each year. The enterprise of the Hilton Boutique Hotel consists of: (a) the rental program; (b) the Boutique Hotel; and (c) other Hilton Branded amenities such as dining, pool, work out facilities, and retail. The rental program places the Plaintiffs' Securities into the hotel's room inventory to be used as luxury suites by Defendants. As a result of the rental program, Plaintiffs have no mechanism by which to control the rental process.

9.  Defendants did not disclose prior to the Plaintiffs' purchase that nearly half of the hotel structure was not being sold to individual unit owners and that the developer was retaining floors three through five of the north tower to directly compete with Plaintiffs in the rental pool. In fact, sales representatives, specifically Ty Myers, were representing in

writing to Plaintiffs and other potential buyers that all 243 units at the hotel were being sold to individual buyers when 142 units are condominium units sold to Plaintiffs and the other 101 hotel units were retained by the developer.

10. Defendants did not disclose prior to Plaintiffs' purchase that the nightly rental rates of Defendants' hotel rooms that were competing with Plaintiffs' hotel rooms would be offered to the general public at desperate rates with Defendants' rooms averaging $50.00 to $150.00 less per night than Plaintiffs' rooms.

11. Defendants' sales teams falsely represented to Plaintiffs that the rental program would be arranged for the rental of Plaintiffs' units whereby the owner of the unit would receive 50% of the rental revenue and Defendants would receive 50% of the rental revenue. The true facts of the situation is that Defendants receive their 56% of the rental revenue and Plaintiffs are credited with their 44% (less the 4% of the gross revenue that is withheld for a reserve fund [which calculates to 9% of the unit owners' net revenue]) but Plaintiffs receive little or no income from the rental revenue due to the previously undisclosed costs Plaintiff must pay for that Defendant is not responsible for. As part of the scheme, Defendants charged the Plaintiffs fees which significantly reduce Plaintiffs' share of the revenue. Defendants also failed to share with Plaintiffs 100% of the revenue which was produced as a result of the rental of Plaintiffs' units. When an owner unit is rented, the revenues produced from the room service, internet fees, pay per view television, income from the mini-bar, income from grocery service, and other common elements of the Hilton Promenade Boutique Hotel which were used by the renter were not shared with the Plaintiff. Solely out of Plaintiffs' share of revenue, Plaintiffs pay 100% of all other additional expenses not revealed until the purchase agreement and rental agreements

6

were signed. These additional charges include a $15.00 to $20.00 monthly linen fee (depending on unit type), $16.90 smoke alarm battery replacement fee, $100.00 to $200.00 biannual deep cleaning fee (depending on unit type), service fees and commissions, hotel rental income shares and association dues that range from $166.13 to $231.42 per month not including property taxes and insurance. The Defendants receive in whole or in part all of these fees. The additional fees reduced Plaintiffs' share of the revenue in most cases to zero and in some cases to a loss in the range of over $20,000.00 per year. During the sales presentations, Defendants touted the amount of profits that Plaintiffs would receive from the revenue generated by the rental of the Securities through Defendants' rental program. Defendants, however, failed to mention the double dip resulting from the front end fees and charges paid by Plaintiffs only reducing the Plaintiff's share of the rental revenue and the back end revenue split again reducing Plaintiff's share of the revenues. As a result, Plaintiffs receive no more than 30% of the revenues before payment of taxes, insurance and loan charges rather than the 50% as represented by Defendants. In 2010, the Defendants added a 4% reserve fund fee that is taken off of the top of the Plaintiffs' share of the revenue. The reserve fund fee is calculated in such a way that actually 9% of the unit owners' net revenue is withheld for the reserve fund. Currently, Plaintiffs are credited with 44% of the gross revenue (less the 4% reserve fund fee) and Defendants 56% changed in Defendants favor from the originally contracted amount. Since the fees are assessed monthly regardless of whether there is any revenue, the actual percentage received by Plaintiffs after payment of fees can drop substantially as gross revenues decline as a result of reduced occupancy and/or room rates. Prior to the purchase, Plaintiffs were presented with a document entitled

7

"Promenade Rental Program, General Summary and Commonly Asked Questions"

which states in part eleven that the expenses are not expected to exceed ten percent of the published rack room rate, a gross misrepresentation.

12. At all relevant times hereto, Defendants operated the Hilton Promenade Boutique Hotel in Missouri and sold the Securities to purchasers in Missouri and other states. Most offers to purchase or sell the Securities between Plaintiffs and Defendants took place in Branson, Missouri and were governed by Missouri law. Some purchases took place at the purchaser's home or in a location in the purchaser's home town but the documents reflect the transactions are to be governed by Missouri law.

13. All of the Securities sold to Plaintiffs by Defendants were sold pursuant to substantially the same marketing strategy of fraudulently raising the potential buyer's expectation of substantial economic benefits from the purchase and ownership of the Securities branded as part of the Hilton enterprise and at the same time concealing the true facts. In every sale that was made of Securities to the Plaintiffs, Defendants uniformly misrepresented the extent of the economic benefit that would be generated from the ownership of the securities, as Hilton Branded Securities, and uniformly concealed material facts.

14. In this suit, Plaintiffs seek rescission as well as equitable relief, including declaratory, injunctive, restitutionary and other equitable monetary relief, and damages as set forth more fully below.

15. As more particularly described herein, the Securities were sold and offered in conjunction with one or more of the following three factors:

8

    a. Emphasis on economic benefits to the purchaser to be derived from the managerial efforts of the promoter, or a third party designated or arranged for by the promoter, from rental of the units;

    b. The offering of participation in a rental management program; or

    c. The offering of a rental or similar arrangement whereby the owner must hold his unit available for rental for any part of the year, must use an exclusive rental agent or is otherwise materially restricted in his occupancy or rental of his unit.

16. For each and every one of the Plaintiffs, the sales process was comprised of the sale of the Securities coupled with Plaintiffs' participation in the Defendants' rental program, which constituted a scheme involving the investment of Plaintiffs' money in a common enterprise with profits to come solely from the efforts of others. The Plaintiffs did not consider the purchase of the Securities for anything other than economic investment. The purchase of the Securities by Plaintiffs was induced by Defendants' concealment of material facts and promises of economic benefits to be derived from the entrepreneurial or managerial efforts of others.

## THE PARTIES

17. Plaintiffs Jason and Debra Obester (husband and wife) are residents of Broken Arrow, Oklahoma, who purchased Security number 2512B for $135,000.00 on July 25, 2008. The certification pursuant to the federal securities laws for Plaintiffs Obester is attached hereto as part of Exhibit #1.

18. Plaintiffs Gus and Tracey Skinner (husband and wife) are residents of Whitley City, Kentucky, who purchased Securities numbered S405A and S405B for the purchase price

of $309,900.00 on March 7, 2007. The certification pursuant to the federal securities laws for Plaintiffs Skinner is attached hereto as part of Exhibit #1.

19. Plaintiffs Greg and Stephanie Smith are husband and wife and are residents of Chesterfield, Missouri, who purchased Securities number 308 and S310 for the purchase price of $335,000.00 on January 16, 2007. The certification pursuant to the federal securities laws for Plaintiffs Smith is attached hereto as part of Exhibit #1.

20. Plaintiff Charles Poziombka is an individual and is a resident of Harrison, Arkansas who purchased Security number S406B for a purchase price of $129,900.00 on January 4, 2007. The certification pursuant to the federal securities laws for Plaintiffs Poziombka is attached hereto as part of Exhibit #1.

21. Plaintiff Hunter-Tunnell Branson Investments, LLC is an Arkansas LLC purchased Security numbered N-202B for a purchase price of $129,900.00 on February 16, 2007. The certification pursuant to the federal securities laws for Plaintiffs Hunter-Tunnell Branson Investments, LLC is attached hereto as part of Exhibit #1.

22. Elaine Bastl is a resident of Saint Louis, Missouri, who purchased Securities numbered S503B and N212B on February 16, 2005 and February 9, 2005 respectively for $129,900.00 each for a total investment of $259,800.00. The certification pursuant to the federal securities laws for Plaintiff Bastl is attached hereto as part of Exhibit #1.

23. Defendant, Boutique Hotel Development Company, LLC doing business as Hilton Promenade at Branson Landing, is a Missouri LLC with its principle place of business in Branson, Taney County, Missouri. At all times relevant hereto, Boutique Hotel Development Company, LLC was the promoter and advertiser of the Hilton Promenade

10

Boutique Hotel who engaged Hilton Worldwide, Inc. as the manager of the Hilton Promenade Boutique Hotel.

24. Defendant, Promenade Development Company, LLC, is a Missouri LLC with its principle place of business in Branson, Taney County, Missouri. At all relevant times hereto, Promenade Development Company, LLC was the Declarant of the Promenade at Branson Landing Condominiums, the project commonly known as the Hilton Promenade Boutique Hotel. Promenade Development Company, LLC was the initial owner of all units now owned by Plaintiffs at the development. Promenade Development Company, LLC is also the owner of 100 hotel rooms currently competing with Plaintiffs' units at the development.

25. Defendant, Hilton Worldwide, Inc., is a Delaware corporation doing business through its employees, agents and entities in Branson, Taney County, Missouri. At all times relevant hereto, Hilton Worldwide, Inc. was the property manager of the Hilton Promenade Boutique Hotel, managing the nightly rentals of Plaintiffs' Securities.

26. Defendant, HCW, LLC is a Missouri LLC with its principle place of business in Branson, Taney County, Missouri. At all relevant times hereto, was the overarching entity developing the Branson Landing Enterprise and the developer of the Hilton Promenade Boutique Hotel.

27. Defendant, HCW Management Consultants, LLC is a Missouri LLC with its principle place of business in Branson, Taney County, Missouri. At all relevant times hereto, have been managing the condominium owner's association for the Hilton Promenade Boutique Hotel.

11

28. Defendant, BLR Downtown Realty, LLC is a Missouri LLC with its principle place of business in Branson, Taney County, Missouri. At all times relevant hereto, BLR Downtown Realty, LLC was the main real estate sales agent for the condominium hotel units sold to Plaintiffs.

29. Defendant, The Branson Landing Master Association, Inc. is a Missouri non-profit corporation with its principle place of business in Branson, Taney County, Missouri. At all times relevant hereto, The Branson Landing Master Association, Inc. is the master association over the Branson Landing enterprise charging association dues to Plaintiffs.

## JURISDICTION AND VENUE

30. The federal law claims asserted arise under Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), Rule 10-b5 promulgated thereunder, Section 12 of the Securities Act of 1933 Act ("1933 Act"). Jurisdiction is conferred by Section 27 of the 1934 Act and Section 22 of the 1933 Act. Venue in the United States District Court for the Western District of Missouri is proper under Section 27 of the 1934 Act and Section of the 1933 Act.

## THE SCHEME

31. This action involves a scheme by the Defendants independently and acting in concert as a single business enterprise to develop, control and operate a massive hotel project through funds derived from the sale of investment contract Securities to passive public investors and thereby recoup enormous profits through the development and operation of the hotel, as well as the satisfaction of Branson Landing's goal of creating a vast hotel complex to provide customers for the Branson Landing's restaurants and other commercial and entertainment businesses without incurring any cost to own and operate the Hilton

Promenade Boutique Hotel. In order to avoid disclosing facts that would have exposed the negative aspects of the investment, Defendants intentionally and knowingly disguised their sale of these investment contract Securities as a real estate transaction, of the purpose of avoiding the requirement of both state and federal laws and regulations that require (a) honest and complete disclosure to investors; (b) just and honorable conduct by those who sell investments; (c) registration of the securities being sold and the incumbent disclosure involved therewith; as well as (d) the registration and qualification of the entities and individuals selling investment contract Securities.

32. As a result of this scheme to cheat and defraud Plaintiffs and similarly situated investors, Defendants were able to reap millions of illegal profits, by concealing from the unsuspecting investors the true nature of the investment scheme they had been lured into and at the same time distribute compensation and proceeds of that scheme to themselves and their confederates without disclosure. Through this scheme, Defendants were able to conceal from their investors the material facts relating to their investments including the profits Defendants derive from the sales to Plaintiffs; the use of the proceeds of Plaintiffs' investments; the transactions occurring between Defendants and their confederates in this scheme as they shared and divided their spoils; the true economics of the investments and reasonable expectation of returns; the conflicts of interest between the investors and Defendants and their confederates in this scheme; and the nature and level of risks being undertaken by those who purchased these Securities that should have been disclosed.

33. As part of their scheme to cheat and defraud, Defendants made the conscious decision in connection with the development of the Branson Landing and the sale and distribution of the investment contract Securities used to finance the venture to conceal the economic

realities of the transactions and to design the presentation and documentation of the transactions in such a way as to hide the true nature of the transactions and conceal material facts regarding their ongoing scheme to distribute unregistered investment contract Securities to public investors. As part of this scheme to distribute these unregistered Securities without an offering circular, Defendants intentionally omitted from disclosure a vast array of material information that should have been provided to investors and potential investors as part of a lawful distribution of these Securities. The material matters that were intentionally and knowingly omitted and concealed included:

    a.   A description of the business of the hotel project and the promoters of the development such that Plaintiffs could know and understand that the rooms labeled as condominium units at the Hilton Promenade Boutique Hotel were priced higher as nightly rentals to the public than the non-condominium rooms owned by the developer and would not likely be rented unless the developer's rooms were rented;

    b.   A description of the plan of operation of the venture, including budget information, sources of cash and anticipated expenditures such that Plaintiffs could know and understand that the represented 50% revenue share to Plaintiffs was actually no more than approximately 30% before Plaintiffs' taxes and loan payments, and included a double dip;

    c.   A clear disclosure that the developer has no obligation to pay any of the common expenses and that Plaintiffs have an obligation to pay all common expenses;

14

d.  The number and nature of employees to be involved in the venture such that Plaintiffs could know and understand that these employees would be paid for exclusively by Plaintiffs;

e.  The market research and competitive information including the number of competitors and the position of the venture among competitors such that Plaintiffs could understand the rental risks and know that they would be paying monthly overhead fees even when there were no rentals;

f.  The financial information about the business of the venture, its promoters and each segment of their business such that Plaintiffs could know and understand that Defendants had no financial risk in the lack of rentals of the owner units at the Hilton Promenade Boutique Hotel because if the owner units were unoccupied, the event cost Defendants nothing for the empty room;

g.  A description of the business structure relating to profits and expense distribution so that Plaintiffs could know and understand that Plaintiffs were incurring all expenses and competing with Defendant developer in occupancy and in rental pricing structure.

h.  The information relating to compliance with state and local laws and regulations such that Plaintiffs could know and understand that they were purchasing unregistered Securities;

i.  Any pending or threatened legal proceedings or the absence thereof such that Plaintiffs could know and understand the problems facing Defendants;

j.  Information with respect to any resale market for the Securities being sold and the potential for any resale market to develop such that Plaintiffs could know and

15

understand that there would be no ready market for resale of these Securities at prices greater than or equal to the prices paid by Plaintiffs;

k.  A description of all material risks of the investment such that Plaintiffs could know and understand that they risked losing their entire investment and were extremely unlikely to realize any profit or even recoup their original capital as the price of the Securities bore no reasonable relationship to the cash flow;

l.  Not disclosing to Plaintiffs that Defendants were making a profit on each sale and the amount thereof, and that Defendants were going to withdraw money Plaintiffs invested as a fee;

m.  The method and plan of the distribution of the investment contract Securities such that Plaintiffs could know and understand the amounts that were being paid as sales commissions;

n.  The use of the proceeds and the approximate amount of such proceeds dedicated to each use such that Plaintiffs could know and understand that Plaintiffs were paying 100% of the ongoing costs of the Hilton Boutique Hotel and receiving approximately 30% or less of the operating income to pay their mortgages, insurance, condominium owner's association dues and taxes;

o.  The identity of any agreements, arrangements or understandings with all brokers participating in the sales of the investment contract Securities including the compensation received by such persons such that Plaintiffs could know and understand the remuneration paid to the sales agent selling the Securities;

p.  The identity, background and compensation of all executive officers and other persons serving in similar capacities as part of the management team such that

16

Plaintiffs could know and understand the relationship between the members of

management and others;

q.  All material contracts relating to the venture including contracts with indemnities

or promoters of the venture such that Plaintiffs could know and understand these

risks; and

r.  A complete disclosure that there was a unit management agreement that was

between the developer and Plaintiffs and between the Hilton Worldwide, Inc. and

Plaintiffs.

s.  A description of the investment contract Security including the rights and

liabilities of the investors and the promoters such that Plaintiffs could analyze

these rights and liabilities individually and with a representative.

t.  A complete disclosure of the fees associated with not participating in Defendants'

rental program so that Plaintiffs could know that if they did not enroll their unit in

Defendants' rental program that Defendants charged Plaintiffs a daily fee for not

enrolling their unit.

34. Each and every one of these omissions is material to an investor or prospective investor

and each was intentionally omitted from disclosures made in connection with sale of the

investment contract Securities by Defendants.

35. Plaintiffs Jason and Debra Obester, on or about July 25, 2008, closed the purchase of

Unit 2512B, one of the Securities for $135,000.00. Prior thereto, Mr. and Mrs. Obester

met with Lawana Smith, Nena Redford, and Dennis Evans, Defendant's sales

representatives. Although omitting all of the material facts set forth in paragraph 25

herein above, the sales representatives did discuss various scripted financial and

economic benefits that would result from participation in Defendants' rental program. Specifically, the sales representatives stated the Hilton Promenade Boutique Hotel would be much more upscale than the comparative hotels in the area and compared the project to several other hotels. The sales representatives provided an anticipated occupancy rate of no less than 47% and an estimate of $239.00 per night as the lowest average room rental rate. The sales representatives also state that participation in the rental program, managed by Hilton, would be a great investment opportunity because the nearby Branson Convention center was booked for the next several years to draw in business. The sales representatives told Plaintiffs that the rental program was through the Hilton Hotel Corporation and that the Hilton Promenade Boutique Hotel was made up of only privately owned units. Plaintiffs made clear to the sales representatives they were solely looking for an investment opportunity and were told that this was only an investment and that some units were already cash flowing. Defendants also uniformly represented in their purchase contract that the sale was not the sale of an investment opportunity. The Security was purchased by Plaintiffs Obester in reliance upon Defendants' material omissions and false and fraudulent statements. Simply stated, as a result of these omissions and misrepresentations, Plaintiffs Obester were convinced by Defendants that as a result of the Branson Landing enterprise that the investment in the Security would be profitable and the value of the Security would appreciate, without Plaintiffs Obester having to provide any services or oversight of the Defendants and the transaction was not a securities investment. Plaintiffs Obester's reliance was induced by Defendants' fraud. Defendants knew at the time of the sale that material information was being withheld and intentionally concealed this material information in order to close the sale. Defendants

18

knew at the time these statements were made these statements, and each of them, were false, but made them to defraud Plaintiffs Obester. Plaintiffs Obester, at all times, up until February 2010, were unaware of Defendants' material omissions and believed these statements were true and had no reason to believe the statements to be false because Defendants' representations were dependent on concealed facts peculiarly within Defendants' knowledge and control that did not become apparent until February 2010. Only after the Security failed to appreciate and produced rental income far below the amounts forecasted by Defendants, could Plaintiffs Obester foresee the continued loss of money by reason of the purchase of the Security, but for Defendants' material omissions and false and fraudulent statements, Plaintiffs Obester would not have purchased the Security that was not registered, and is not exempt from registration. As a result of these facts, Plaintiffs Obester are entitled to and hereby seek to rescind the transaction and be restored all money paid to Defendants plus interest thereon from the date of purchase, plus all damages resulting therefrom.

36. Plaintiffs, Gus and Tracy Skinner (husband and wife), on or about December 21, 2004, closed the purchase of units S405A&B, two of the Securities for $309,900.00. Prior thereto, Plaintiffs Skinner met with Defendants' sales representatives Dennis Evans and Lynette McBratney. Although omitting all of the material facts set forth in paragraph 25 herein above, the sales representatives did discuss various scripted financial and economic benefits that would result from participation in Defendants' rental program. Specifically, the sales representatives stated the Hilton Promenade Boutique Hotel would be much more upscale than the comparative hotels in the area and compared the project to several other hotels. The sales representatives provided an anticipated occupancy rate

19

of no less than 47% and an estimate of $269.00 per night as the lowest average room rental rate. The sales representatives also state that participation in the rental program, managed by Hilton, would be a great investment opportunity because the nearby Branson Convention center was booked for the next several years to draw in business. The sales representatives told Plaintiffs that the rental program was through the Hilton Hotel Corporation and that the Hilton Promenade Boutique Hotel was made up of only privately owned units. Plaintiffs made clear to the sales representatives they were solely looking for an investment opportunity because they were wanting to retire and were told that this was only an investment. Defendants also uniformly represented in their purchase contract that the sale was not the sale of an investment opportunity. The Security was purchased by Plaintiffs Skinner in reliance upon Defendants' material omissions and false and fraudulent statements. Simply stated, as a result of these omissions and misrepresentations, Plaintiffs Skinner were convinced by Defendants that as a result of the Branson Landing enterprise that the investment in the Security would be profitable and the value of the Security would appreciate, without Plaintiffs Skinner having to provide any services or oversight of the Defendants and the transaction was not a securities investment. Plaintiffs Skinner's reliance was induced by Defendants' fraud. Defendants knew at the time of the sale that material information was being withheld and intentionally concealed this material information in order to close the sale. Defendants knew at the time these statements were made these statements, and each of them, were false, but made them to defraud Plaintiffs Skinner. Plaintiffs Skinner, at all times, up until February 2010, were unaware of Defendants' material omissions and believed these statements were true and had no reason to believe the statements to be false because

Defendants' representations were dependent on concealed facts peculiarly within Defendants' knowledge and control that did not become apparent until February 2010. Only after the Security failed to appreciate and produced rental income far below the amounts forecasted by Defendants, could Plaintiffs Skinner foresee the continued loss of money by reason of the purchase of the Security, but for Defendants' material omissions and false and fraudulent statements, Plaintiffs Skinner would not have purchased the Security that was not registered, and is not exempt from registration. As a result of these facts, Plaintiffs Skinner are entitled to and hereby seek to rescind the transaction and be restored all money paid to Defendants plus interest thereon from the date of purchase, plus all damages resulting therefrom.

37. Plaintiffs, Greg and Stephanie Smith (husband and wife), on or about January 16, 2007, closed the purchase of units 308 and S310, two of the Securities for $335,000.00. Prior thereto, Plaintiffs Smith met with Defendants' sales representatives Dennis Evans. Although omitting all of the material facts set forth in paragraph 25 herein above, the sales representatives did discuss various scripted financial and economic benefits that would result from participation in Defendants' rental program. Specifically, the sales representatives stated the units Plaintiffs Smith were buying were very cheap and that they could easily be resold for a high profit. Plaintiffs Smith were also told that Hilton Promenade Boutique Hotel would be much more upscale than the comparative hotels in the area and compared the project to several other hotels. The sales representatives also state that participation in the rental program, managed by Hilton, would be a great investment opportunity because the nearby Branson Convention center was booked for the next several years to draw in business. The sales representatives told Plaintiffs that

the rental program was through the Hilton Hotel Corporation and that the Hilton Promenade Boutique Hotel was made up of only privately owned units. Defendants' sales representatives specifically told Plaintiffs the property was only for investment purposes. Defendants also uniformly represented in their purchase contract that the sale was not the sale of an investment opportunity. The Security was purchased by Plaintiffs Smith in reliance upon Defendants' material omissions and false and fraudulent statements. Simply stated, as a result of these omissions and misrepresentations, Plaintiffs Smith were convinced by Defendants that as a result of the Branson Landing enterprise that the investment in the Security would be profitable and the value of the Security would appreciate, without Plaintiffs Smith having to provide any services or oversight of the Defendants and the transaction was not a securities investment. Plaintiffs Smith's reliance was induced by Defendants' fraud. Defendants knew at the time of the sale that material information was being withheld and intentionally concealed this material information in order to close the sale. Defendants knew at the time these statements were made these statements, and each of them, were false, but made them to defraud Plaintiffs Smith. Plaintiffs Smith, at all times, up until February 2010, were unaware of Defendants' material omissions and believed these statements were true and had no reason to believe the statements to be false because Defendants' representations were dependent on concealed facts peculiarly within Defendants' knowledge and control that did not become apparent until February 2010. Only after the Security failed to appreciate and produced rental income far below the amounts forecasted by Defendants, could Plaintiffs Smith foresee the continued loss of money by reason of the purchase of the Security, but for Defendants' material omissions and false and fraudulent statements, Plaintiffs Smith

would not have purchased the Security that was not registered, and is not exempt from registration. As a result of these facts, Plaintiffs Smith are entitled to and hereby seek to rescind the transaction and be restored all money paid to Defendants plus interest thereon from the date of purchase, plus all damages resulting therefrom.

38. Plaintiff, Charles Poziombka, on or about January 4, 2004, closed the purchase of unit S406B, one of the Securities for $129,900.00. Prior thereto, Plaintiff Poziombka met with Defendants' sales representatives Nena Redford. Although omitting all of the material facts set forth in paragraph 25 herein above, the sales representatives did discuss various scripted financial and economic benefits that would result from participation in Defendants' rental program. Specifically, the sales representatives stated the State of Missouri and City of Branson were spending billions of dollars on the Branson Landing project and that Highway 65 would be re-routed to go through the Branson Landing. Plaintiffs were told that Hilton Promenade Boutique Hotel would be much more upscale than the comparative hotels in the area and compared the project to several other hotels. Plaintiffs were also told that the rental projections were on the low side of 50%, that the association fees covered utilities and minor repairs when the same was not true. The sales representatives also state that participation in the rental program, managed by Hilton, would be a great investment opportunity because the nearby Branson Convention center was booked for the next several years to draw in business. The sales representatives told Plaintiffs that the rental program was through the Hilton Hotel Corporation and that the Hilton Promenade Boutique Hotel was made up of only privately owned units. Defendants' sales representatives specifically told Plaintiffs the property was only for investment purposes. Defendants also uniformly represented in their purchase contract

that the sale was not the sale of an investment opportunity. The Security was purchased by Plaintiffs Poziombka in reliance upon Defendants' material omissions and false and fraudulent statements. Simply stated, as a result of these omissions and misrepresentations, Plaintiff Poziombka was convinced by Defendants that as a result of the Branson Landing enterprise that the investment in the Security would be profitable and the value of the Security would appreciate, without Plaintiff Poziombka having to provide any services or oversight of the Defendants and the transaction was not a securities investment. Plaintiff Poziombka's reliance was induced by Defendants' fraud. Defendants knew at the time of the sale that material information was being withheld and intentionally concealed this material information in order to close the sale. Defendants knew at the time these statements were made these statements, and each of them, were false, but made them to defraud Plaintiff Poziombka. Plaintiff Poziombka, at all times, up until February 2010, was unaware of Defendants' material omissions and believed these statements were true and had no reason to believe the statements to be false because Defendants' representations were dependent on concealed facts peculiarly within Defendants' knowledge and control that did not become apparent until February 2010. Only after the Security failed to appreciate and produced rental income far below the amounts forecasted by Defendants, could Plaintiff Poziombka foresee the continued loss of money by reason of the purchase of the Security, but for Defendants' material omissions and false and fraudulent statements, Plaintiff Poziombka would not have purchased the Security that was not registered, and is not exempt from registration. As a result of these facts, Plaintiff Poziombka is entitled to and hereby seek to rescind the

transaction and be restored all money paid to Defendants plus interest thereon from the date of purchase, plus all damages resulting therefrom.

39. Plaintiff, Hunter-Tunnell Branson Investments, LLC, on or about February 16, 2007, closed the purchase of unit N-202B, one of the Securities for $129,900.00. Prior thereto, Plaintiff Hunter-Tunnell Branson Investments, LLC met with Defendants' sales representatives Bill White. Although omitting all of the material facts set forth in paragraph 25 herein above, the sales representatives did discuss various scripted financial and economic benefits that would result from participation in Defendants' rental program. Specifically, the sales representatives stated the unit was an excellent income producing opportunity. The sales representative represented the unit as a pre-sale opportunity that was priced well below market value. Plaintiffs were pressured into buying quickly as Defendants were running out and there were very few units still for sale. The sales representative lead Plaintiffs to believe that the unit would pay for itself every month and that it would produce significant income, in fact the income producing potential was the main focus of the sales conversation. Plaintiffs were told that HCW expected the property value to appreciate rapidly once the Branson Landing opened for business. The sales representatives also stated that participation in the rental program, managed by Hilton, would be a great investment opportunity because the nearby Branson Convention center was booked for the next several years to draw in business. The sales representatives told Plaintiffs that the rental program was through the Hilton Hotel Corporation and that the Hilton Promenade Boutique Hotel was made up of only privately owned units. Defendants' sales representatives specifically told Plaintiffs the property was only for investment purposes. Defendants also uniformly represented in

their purchase contract that the sale was not the sale of an investment opportunity. The Security was purchased by Plaintiffs Hunter-Tunnell Branson Investments, LLC in reliance upon Defendants' material omissions and false and fraudulent statements. Simply stated, as a result of these omissions and misrepresentations, Plaintiff Hunter-Tunnell Branson Investments, LLC was convinced by Defendants that as a result of the Branson Landing enterprise that the investment in the Security would be profitable and the value of the Security would appreciate, without Plaintiff Hunter-Tunnell Branson Investments, LLC having to provide any services or oversight of the Defendants and the transaction was not a securities investment. Plaintiff Hunter-Tunnell Branson Investments, LLC's reliance was induced by Defendants' fraud. Defendants knew at the time of the sale that material information was being withheld and intentionally concealed this material information in order to close the sale. Defendants knew at the time these statements were made these statements, and each of them, were false, but made them to defraud Plaintiff Hunter-Tunnell Branson Investments, LLC. Plaintiff Hunter-Tunnell Branson Investments, LLC, at all times, up until February 2010, was unaware of Defendants' material omissions and believed these statements were true and had no reason to believe the statements to be false because Defendants' representations were dependent on concealed facts peculiarly within Defendants' knowledge and control that did not become apparent until February 2010. Only after the Security failed to appreciate and produced rental income far below the amounts forecasted by Defendants, could Plaintiff Hunter-Tunnell Branson Investments, LLC foresee the continued loss of money by reason of the purchase of the Security, but for Defendants' material omissions and false and fraudulent statements, Plaintiff Hunter-Tunnell Branson Investments, LLC

would not have purchased the Security that was not registered, and is not exempt from registration. As a result of these facts, Plaintiff Hunter-Tunnell Branson Investments, LLC is entitled to and hereby seek to rescind the transaction and be restored all money paid to Defendants plus interest thereon from the date of purchase, plus all damages resulting therefrom.

40. Plaintiff Elaine Bastl, on or about February 16, 2005, closed the purchase of Unit S503B, one of the Securities for $129,900.00 and on or about February 9, 2005, closed the purchase of Unit N212B, one of the Securities for $129,900.00. Prior thereto, Ms. Bastl met with Nancy White, Defendant's sales representatives. Although omitting all of the material facts set forth in paragraph 25 herein above, the sales representatives did discuss various scripted financial and economic benefits that would result from participation in Defendants' rental program. Specifically, the sales representatives stated the Hilton Promenade Boutique Hotel would be much more upscale than the comparative hotels in the area and compared the project to several other hotels. The sales representatives provided an anticipated occupancy rate of no less than 47% and an estimate of $239.00 per night as the lowest average room rental rate. The sales representatives also stated that participation in the rental program, managed by Hilton, would be a great investment opportunity because the nearby Branson Convention center was booked for the next several years to draw in business. The sales representatives told Plaintiffs that the rental program was through the Hilton Hotel Corporation and that the Hilton Promenade Boutique Hotel was made up of only privately owned units. Plaintiffs made clear to the sales representatives they were solely looking for an investment opportunity and were told that this was only an investment and that some units were already cash flowing.

Defendants also uniformly represented in their purchase contract that the sale was not the sale of an investment opportunity. The Security was purchased by Plaintiff Bastl in reliance upon Defendants' material omissions and false and fraudulent statements. Simply stated, as a result of these omissions and misrepresentations, Plaintiff Bastl were convinced by Defendants that as a result of the Branson Landing enterprise that the investment in the Security would be profitable and the value of the Security would appreciate, without Plaintiff Bastl having to provide any services or oversight of the Defendants and the transaction was not a securities investment. Plaintiff Bastl's reliance was induced by Defendants' fraud. Defendants knew at the time of the sale that material information was being withheld and intentionally concealed this material information in order to close the sale. Defendants knew at the time these statements were made these statements, and each of them, were false, but made them to defraud Plaintiffs Bastl. Plaintiff Bastl, at all times, up until February 2010, were unaware of Defendants' material omissions and believed these statements were true and had no reason to believe the statements to be false because Defendants' representations were dependent on concealed facts peculiarly within Defendants' knowledge and control that did not become apparent until February 2010. Only after the Security failed to appreciate and produced rental income far below the amounts forecasted by Defendants, could Plaintiff Bastl foresee the continued loss of money by reason of the purchase of the Security, but for Defendants' material omissions and false and fraudulent statements, Plaintiffs Bastl would not have purchased the Security that was not registered, and is not exempt from registration. As a result of these facts, Plaintiff Bastl is entitled to and hereby seek to rescind the transaction

and be restored all money paid to Defendants plus interest thereon from the date of

purchase, plus all damages resulting therefrom.

CLASS ALLEGATIONS

41. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure as

a class action on their own and on behalf of a class defined as:

> ALL INDIVIDUALS WHO PURCHASED ONE OR MORE OF THE
> SECURITIES IN THE HILTON PROMENADE AT BRANSON LANDING
> FROM DEFENDANTS
>
> Excluded from the Class are Defendants, any parent, subsidiary of affiliate of
> Defendants, and their officers, directors, and employees, who are or have been
> employed by Defendants during the above defined Class Period, and any judicial
> officer who may preside over this cause of action.

42. The requirements for maintaining this action as a class action under Rule 23 of the

Federal Rules of Civil procedure are satisfied in that :

    a.  It is impracticable to bring all members of the Class before the Court. Plaintiffs

        estimate there are over one hundred Class Members, geographically spread

        throughout the United States, and that their identities can be ascertained from

        Defendants' books and records. Attempting to join and name each Class member

        as a Co-Plaintiff would be unreasonable and impracticable.

    b.  There are questions of law and fact common to the Class, which are identical for

        each member of the Class and which predominate over the questions affecting the

        individual Class members, if any. Among these common questions of law and fact

        are:

            i.  Whether Defendants sold securities within the meaning of R.S.Mo. § 409-

              003.301, the Securities Act of 1933 and/or the Securities Exchange Act of

              1934;

29

ii.   Whether Defendants registered their Securities;

iii.   Whether Defendants' conduct violated R.S.Mo. § 409-003.301;

iv.    Whether Defendants' conduct violated Rule 10b(5);

v.   Whether Defendants' conduct violated Rule 12a(1);

vi.   Whether Defendants' conduct violated Rule 12a(2);

vii.   Defendants' conduct violated R.S.Mo. §409-005.501;

viii.   Whether Defendants represented that the investments in the Hilton Promenade at Branson Landing would earn a rate of return and/or was guaranteed, secured or protected, which Defendants knew or had reason to know was false and/or misleading;

ix.   Whether Defendants concealed material facts and/or omitted to state material facts about the investment in the Hilton Promenade at Branson Landing;

x.   Whether Defendants made untrue statements of material facts about the investment in the Hilton Promenade at Branson Landing;

xi.   Whether Defendants failed to comply with applicable laws and regulations concerning the marketing and sale of investment securities; and

xii.   Whether Defendants conducted the offering and sale of investment Securities in the form of the condominium-hotel room units at the Hilton Promenade at Branson Landing without all the required licensing and regulatory approvals.

c.  The scripted sales representation and practices here uniformly made to the class representatives and to each member of the class were part of a common scheme

applicable to each of them. As to each member of the class the material omissions were the same, the representations of branding and association with the Hilton name were the same, the dependency upon the success of failure of the Branson Landing enterprise was the same, the promotion of the investment that a valuable benefit was critical for all, the lack of any right to exercise any practical or actual control over the managerial decision of the Hilton Promenade Boutique Hotel/Branson Landing enterprise was the same for all Plaintiffs and the other representations herein alleged were similarly presented by Defendants to the members of the Class and the named Plaintiffs. The material omissions and the sales techniques used by Defendants were part of a coordinated scheme involving common sales materials, instructions, training and practice review. The scripted sales pitches being made to each purchaser member of the Class included the same material omissions and representations and the same elements of deception described for the named Plaintiffs. Each of the members of the Class justifiably relied on those material omissions and representations of fact in making their investment purchase decisions, and each has been similarly damaged by the falsity of the statements so relied upon.

d. The claims of the representative Plaintiffs are typical of the claims of the Class in that each Plaintiff purchased one or more of the Securities in the Hilton Promenade Boutique Hotel offered by Defendants.

e. The claims of the representative Plaintiffs will fairly and adequately protect the interests of the Class. The Class interests are coincident with, and not antagonistic

to, those of the Plaintiffs. Furthermore, Plaintiffs are represented by experienced class action counsel.

43. In this action, Plaintiffs and the Class seek all equitable, compensatory, special and punitive damages authorized under Missouri law for which class-wide relief is available, disgorgement, restitution and reasonable attorneys' fees and costs incurred in the prosecution of this action. There are no manageability problems due to variations in state laws or choice of law provisions, because Missouri law applies to the claims of all the members of the Class asserted herein. Class wide litigation of the predominating common issues is superior to any other form of litigation, including individual litigation.

44. The conduct of the Defendants in the offering and sale of the Securities to the other members of the Class followed substantially the same pattern and involved substantially the same conduct. The Securities sold to the Class were securities within the meaning of Missouri law for the same reasons set forth in paragraph 3 above. The offering and sale of the Securities to the members of the Class was fraudulent, illegal and a deceptive trade practice for the same reasons the offering and sale of the Securities to the Plaintiffs was fraudulent, illegal and a deceptive trade practice.

COUNT I

(Violation of Section 12(a)(1) of the 1933 Securities Act by All Defendants)

45. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

46. No registration statement was filed or in effect with the SEC pursuant to the Securities Act and no exemption from registration existed with respect to the Securities and transactions described in this Complaint.

47. Defendants, directly and indirectly, have: (a) made use of the means or instruments of transportation or communications in interstate commerce or of the mails to sell the Securities as described herein, through the use or medium of oral representations and written materials; (b) caused the Securities to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; and/or (c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell the Securities as described herein through use or medium of oral representations and written materials, as described in the Complaint, without a registration statement having been filed or being in effect with the Commission as to the Securities or qualification for an exemption therefrom.

48. Defendants, directly and indirectly, offered to sell and indeed sold these Securities to Plaintiffs without a registration statement having been filed or being in effect with the SEC or qualify for an exemption therefrom. By reason of the foregoing, Defendants have violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

49. By reason of the conduct alleged herein, Defendants violated Section 12(a)(1) of the 1933 Act. Plaintiffs demand rescission of these sales of unregistered Securities.

50. Defendants have further violated the Securities Act of 1933 by failing to comply with rules promulgated by the Securities and Exchange Commission (SEC) specifically Release No. 33-5347 which deals specifically with condominium sales.

33

51. Under SEC Release No. 33-5347, the condominium units Defendants sold to Plaintiffs are unregistered securities.

52. Defendants affirmatively and actively concealed their unlawful conduct from Plaintiffs. Defendants concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection. Defendants' investment contract included the following language specifically designed to conceal the fact Defendants were selling unregistered Securities:

> 7. No sales representative promised that the purchase of a Unit would provide investment potential, or tax advantages in regard to my purchase of the Unit(s). No representation has been made to me as to the amount of any gross rental income, the number of nights the Unit(s) will be rented, or the average daily rental price. I understand and acknowledge that participation in any rental program is not mandatory and that I may choose to enter the rental program of my own volition now or at a later date if I so desire.

Plaintiffs did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants were violating the securities laws as alleged herein until shortly before this class action litigation was commenced. As a result of the active concealment of the unlawful conduct by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

COUNT II

(Violation of Section 12(a)(2) of the 1933 Securities Act by All Defendants)

53. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

54. Under Section 12(a)(2) of the Securities Act of 1933, Defendants were sellers, offerors and/or solicitors of the Securities. Defendants solicited the sale of the Securities to each of the Class Members for Defendants' own financial benefit.

55. The statements referred to hereinabove were made in scripted oral representations and other materials made by Defendants to the Class Members. The scripted oral representations to the Class Members contained untrue statements of material facts, omitted other facts necessary to make the statements made not misleading and failed to disclose material facts. Defendants acted to sell the Securities by way of the scripted oral representations. Defendants' actions included preparing the scripted oral presentations and other material used in the sale of the Securities which were false and misleading because they did not disclose the material adverse facts set forth above.

56. Plaintiffs and the other members of the Class purchased the Securities pursuant to the Defendants' scripted oral representations. Plaintiffs and the other members of the Class did not know, and in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in or made in connection with Defendants' scripted oral representations.

57. Defendants used real estate agents, not a securities broker dealer to sell the unregistered securities.

58. By reason of the conduct alleged herein, Defendants violated Section 12(a)(2) of the 1933 Act and rules promulgated there under. As a proximate result of Defendants' violations Plaintiffs and each of the Class Members have been damaged.

59. Defendants affirmatively and actively concealed their unlawful conduct from Plaintiffs. Defendants concealed the true nature of their unlawful conduct and acts in furtherance

thereof, and actively concealed their activities through various other means and methods to avoid detection. Plaintiffs did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants were violating the securities laws as alleged herein until shortly before this class action litigation was commenced. As a result of the active concealment of the unlawful conduct by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

COUNT III

(Violation of Section 10(b) of the 1934 Securities Act and Rule 10b-5 by all Defendants)

60. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

61. During the Class Period, Defendants disseminated or approved the statements specified above, which they knew were materially false and misleading in that they concealed and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

62. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

    a. Employed devices, schemes, and artifices to defraud;

    b. Omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and/or

    c. Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with the purchases of Securities during the Class Period.

36

63. Plaintiffs and the Class have suffered damages in that, as a result of Defendants' concealment of material facts, they purchased Securities with a value far less than the amount paid. Plaintiffs and the Class would not have bought these Securities if they had been aware of the true facts that were concealed and not disclosed by Defendants.

64. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their purchase of the Securities during the Class Period.

COUNT IV

(Violation of R.S.Mo. §409-003.301 by all Defendants)

65. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

66. The entire amounts paid by each and every Plaintiff was subject to the risk of the Hilton Promenade Boutique Hotel enterprise to rent the Securities, branded Hilton Boutique Hotel rooms, at a projected rate for a projected range of days within each year. All of the economic benefits to be derived from the Security were inextricably bound to the success of the entire Hilton Hotel branded enterprise as a whole. The occupancy rates of the Security, from which Plaintiffs sought to derive rental profits, were dependent upon the success of the Hilton brand.

67. The furnishing of the amounts paid by each and every Plaintiff for the Securities purchased were induced by Defendants' omissions of material fact set forth in paragraph 29 herein above and representations which gave rise to a reasonable understanding

among the Plaintiffs that a valuable benefit in the form of prospective economic benefits would accrue to Plaintiffs from the entrepreneurial or managerial efforts of others managing the Hilton Promenade Boutique Hotel, the Branson Landing and the Rental Program at the Hilton Promenade Boutique Hotel, induced Plaintiffs to purchase the Securities. The economic benefit, over and above the amounts paid for the purchase of the Securities, that Defendants' sales team promised would flow to Plaintiffs from the purchase of the Securities were the primary motivation behind Plaintiffs' purchase of the Securities. Residency was never discussed and was specifically disallowed by the Defendants' purchase contract.

68. Plaintiffs did not intend to receive any right to exercise practical and/or actual control over the managerial decisions of the Hilton enterprise. Furthermore, Plaintiffs did not exercise any power to influence the utilization of the capital invested in the Securities. Instead, the economic benefits that Plaintiffs were told by Defendants would flow from the purchase of the Securities would result from the name recognition of the Hilton Hotel brand, the strength of the rental program management, and the ability of the reservation system of the rental program to yield income after purchase.

69. Defendants issued the Securities, which were not exempt from registration, to Plaintiffs without abiding by the registration requirements of Missouri, did not have any preemption there from and therefore Plaintiffs, under R.S.Mo. § 409-005.509, may recover the consideration paid for the Securities and interest at the legal rate of this State from the date of payment, costs and reasonable attorney's fees, less the amount of income received on the Securities.

70. Plaintiffs who no longer own the Securities may recover damages. Damages are the amount that would be recoverable upon a tender less the value of the Secruties when the purchaser disposed of it, plus interest at the legal rate of this State from the date of disposition of the Securities, costs and reasonable attorney's fees determined by the court. Tender requires only notice of willingness to exchange the Securities for the amount specified.

COUNT V

(Violation of R.S.Mo. §409-005.501)

71. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

72. It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly:

(1) To employ a device, scheme or artifice to defraud;
(2) To make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading; or
(3) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

R.S.Mo.§ 409-005-501.

73. Defendants, through the sales and rental management presentations of the unregistered Securities have employed a device, scheme or artifice to defraud described in specificity above in this Complaint and incorporated by reference herein, by making material omissions of fact as set forth in Paragraph 29 above and false representation as set forth herein.

39

74. Defendants, further through the sales and rental management presentations of the unregistered Securities, as described with specificity above in this Complaint and incorporated by reference herein, made several untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made not misleading in the true circumstances concerning the Defendants' actual ability to forecast or predict the profitability of participating in Defendants' rental management program and the minimum rental rates, the minimum occupancy rates, and the anticipated appreciation rates of the Securities.

75. Defendants, through the intentional omission of material facts and false and fraudulent sales and rental presentation described with specificity above, engaged in acts, practices and/or a course of business which operated as a fraud or deceit upon the Plaintiffs by inducing Plaintiffs to purchase the Securities and enter the Defendants' rental management program based on dubious predictions of economic expectations that the Defendants knew to be false at the time such predictions were made. Moreover, the Defendants knew that these statements were untrue and the omissions were material and misleading, but made them to defraud Plaintiffs.

76. Plaintiffs did not know that the statements of material facts made to them by Defendants during the sales presentations were untrue or that there was an omission of a statement of material fact.

77. Plaintiffs did not receive any written offer, including financial and other information necessary to correct all material misstatements or omissions in the information required to be furnished to Plaintiffs, as of the time of the sale of Securities.

78. Defendants, pursuant to the fraudulent scheme, business practice, and on the basis of untrue material facts and omissions, issued Securities, which were not exempt from registration, to Plaintiffs without abiding by the registration requirements of Missouri and therefore Plaintiffs, under R.S.Mo. §409-005.509, may recover the consideration paid for the Securities and interest at the legal rate of this State from the date of payment, costs and reasonable attorney's fees, less the amount of income received from the Securities.

79. Plaintiffs who no longer own the Securities may recover damages. Damages are the amount that would be recoverable upon a tender less the value of the Securities when the purchaser disposed of it, plus interest at the legal rate of this State from the date of disposition of the Securities, costs and reasonable attorney's fees determined by the court. Tender requires only notice of willingness to exchange the Securities for the amount specified.

COUNT VI

(Violation of R.S.Mo. Chapter 407, et seq. by all Defendants)

80. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

81. Plaintiffs bring this claim under Missouri consumer protection laws, particularly R.S.Mo. §407.020, et seq., on behalf of themselves and the Class who purchased the air rights to condominium hotel room units from Defendants, and who were thus subject to Defendants' above-described deceptive, unlawful and fraudulent conduct.

41

82. The air rights to condominium hotel room units, as described above, were purchased by the Plaintiffs and by other consumers similarly situated primarily for investment purposes.

83. Defendants' contracts are set up in such a way as to make the air rights identical and in fact the same as that of a timeshare. Timeshares are merchandise pursuant to R.S.Mo. §407.630 and these sales must be treated as such.

84. The Defendant developers of this project are former time share sales people, managers, and/or employees and have knowledge of the timeshare industry and are familiar with the sales contracts of the same.

85. The Defendants violated their statutory duty under the Missouri Merchandising Practices Act by advertising, offering and selling the air rights to condominium-hotel room units at the Hilton Promenade Boutique Hotel at Branson Landing as described herein above.

86. Further, Defendants' sales contracts are volumous pages of disclosures which they did not allow Plaintiffs sufficient time to review and reflect upon prior to signing.

87. The Defendants violated their duty under the aforementioned statutes including but not limited to §407.020 by among other things, (a) representing that the condominium-hotel room units at the Hilton Promenade Boutique Hotel would earn a rate of return and/or was guaranteed, secured or protected, which Defendants knew or had reason to know was false and/or misleading; (b) making untrue statements of material facts and/or omitting to state material facts about the units at the Hilton Promenade Boutique Hotel; (c) failing to comply with applicable laws and regulations concerning the marketing and sale of the units; and/or (d) conducting the offering and sale of the units at the Hilton Promenade Boutique Hotel without all required licensing and regulatory approvals.

42

88. The Defendants' actions as alleged herein were materially deceptive and constituted fraud, false pretense, misrepresentation and the concealment, suppression and omission of material facts with the intent that Plaintiffs and the Class would rely upon the fraudulent misrepresentation, concealment, suppression and omission of such material facts, all in violation of the Missouri Merchandising Practices Act.

89. Plaintiffs and the other members of the Class were injured by the many violations of the Missouri Merchandising Practices Act, and Plaintiffs and the Class have thereby been damaged in an amount to be proven at trial.

90. Defendants' actions were intentional, willful and outrageous giving rise to punitive damages and attorney's fees authorized under the statute, R.S.Mo. §407.025.

## COUNT VII

### (Fraudulent Misrepresentation by All Defendants)

91. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

92. Defendants made false and fraudulent misrepresentations, as described with specificity above and incorporated by reference herein, that as a result of Hilton Hotel branding, hotel reservations, room rates, occupancy rates, Defendants' rental program and the other amenities being delivered by the Branson Landing enterprise, the investment in the Securities would be profitable and the value of the Securities would appreciate, without Plaintiffs, having to provide any services or oversight of the Defendants.

43

93. Defendants, and each of them, made these representations with the knowledge or belief that the representations were false or with an insufficient basis of information for making the representations.

94. Defendants intended to induce Plaintiffs to act upon the misrepresentations by entering into the sales agreement to purchase the Securities and also entering into the rental management agreement.

95. Plaintiffs were ignorant of the truth of the misrepresentations and concealments made by Defendants an in fact justifiably relied on the misrepresentations made by Defendants.

96. As a direct and proximate result of Defendants' misstatements and misrepresentations of material facts, Plaintiffs entered into a written agreement for the purchase of the condominium hotel, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set forth herein above an in an amount to be proven at trial.

97. As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

98. Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are, therefore, entitled to punitive damages to make an example of and to punish these Defendants in addition to actual damages.

## COUNT VIII

### (Negligent Misrepresentation by All Defendants)

99. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

100.     Defendants supplied false guidance in discussions relating to the sale of Defendants' condominium hotel units at the Hilton Promenade Boutique Hotel as described with specificity above and incorporated by reference herein. Defendants failed to exercise reasonable care or competence in obtaining or communicating the information which consisted of misrepresentations, not only concerning the property value of the condominium hotel units, but also concerning the anticipated rental value and occupancy rate of the units, and the profitability of participating in Defendants' rental management program. Such misrepresentations were made in the course of Defendants' business, profession or employment, and/or in any such transaction in which Defendants had a pecuniary interest.

101.     The misrepresentations made to Plaintiffs included the false and fraudulent statements described above with specificity in this complaint and incorporated by reference herein.

102.     Defendants, and each of them, made these representations negligently, and without any reasonable basis for believing them to be true.

103.     Plaintiffs were ignorant of the truth of the misrepresentations and concealments made by Defendants and in fact justifiably relied on the misrepresentations made by Defendants and each of them.

104.    As a direct and proximate result of Defendants' misstatements and misrepresentations of material facts, Plaintiffs entered into a written agreement for the purchase of the condominium hotel, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set forth herein above and in an amount to be proven at trial.

105.    As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and return of any and all money or property given, plus interest and expenses.

COUNT IX

(Fraud in the Inducement by All Defendants)

106.    Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

107.    Plaintiffs contracted with Defendants and relied upon Defendants to provide their professional expertise and judgment with respect to the purchase of condominium hotel units at the Hilton Promenade Boutique Hotel. Defendants utilized an inside and outside sales team in order to make false representations to the Plaintiffs in order to induce their consent to enter into the purchase agreement and the rental management agreement. Both Defendants' inside and outside sales team had knowledge or belief that the representations were false or knowledge that it had an insufficient basis for making the representations.

46

108.    The material omissions and false representations made to Plaintiffs included the fraudulent statements described with specificity above and incorporated by reference herein.

109.    Defendants presented numerous false representations regarding the true economic value of such investment from Plaintiffs, despite knowing and concealing the true and correct facts of the rental values, expected rental occupancy rate of the Securities, and the amount of profits Plaintiffs would receive from participating in Defendants' rental management program.

110.    Defendants, and each of them, had a duty to disclose the true nature of all known material facts and circumstances surrounding the economic value of the Securities. Defendants had exclusive knowledge of all such material facts and such material facts were not known or reasonably accessible to Plaintiffs.

111.    The concealment of the true facts from Plaintiffs was done with the intent to induce their consent to enter into the purchase agreement and the rental management agreement.

112.    Plaintiffs justifiable reliance on statements made by Defendants was justified as Defendants purported to have professional expertise concerning the economic value of the condominium hotel units.

113.    As a result of Defendants' false representations regarding the true economic value of the condominium hotel units complained of in this complaint, Plaintiffs were unaware of the true nature of the facts concerning the true value of the condominium hotel units as economic investments.

114.     As a result of the false representations, Plaintiffs entered into a written agreement for the purchase of the condominium hotel unit, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set out herein above in an amount to be proven at trial.

115.     As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

116.     Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are therefore, entitled to punitive damages to make an example of and to punish Defendants in addition to actual damages.

COUNT X

(Fraudulent Concealment by All Defendants)

117.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

118.     Plaintiffs contracted with Defendants and relied upon Defendants to provide their professional expertise and judgment with respect to the purchase of Securities at the Hilton Promenade Boutique Hotel. Defendants utilized an inside and outside sales team in order to sell these units. The teams employed by Defendants concealed and/or suppressed material facts relating to the true economic value of the condominium units.

48

119.     The material facts concealed from Plaintiffs included the fraudulent statements described with specificity above and incorporated by reference herein.

120.     Defendants concealed and suppressed the material facts regarding the true economic value of such investment from Plaintiffs, despite knowing the true and correct facts regarding the Securities. The misrepresentations were made and the true and correct facts concealed by Defendants in order to intentionally induce the Plaintiffs' consent to purchase the condominium unit and enter into the rental management agreement with Defendants.

121.     Defendants, and each of them, had a duty to disclose the true nature of all known material facts and circumstances surrounding the rental values, expected rental occupancy rate, and relevant material facts described above and incorporated by reference herein. Defendants had exclusive knowledge of all such material facts and such material facts were not known or reasonably accessible to Plaintiffs.

122.     Plaintiffs' reliance on statements made by Defendants, and each of them, was justified as Defendants purported to have professional expertise concerning the economic value of the condominium hotel units.

123.     As a result of Defendants' intentional misrepresentation of material facts regarding the true economic value of the condominium hotel units complained of in the complaint, Plaintiffs were unaware of the true nature of the facts concerning the true value of the condominium hotel units as economic investments. Had Plaintiffs been aware of the material facts concealed by Defendants, Plaintiffs would not have entered into any agreements with the Defendants.

124.    As a result of the concealment alleged, Plaintiffs entered into a written agreement for the purchase of the Securities, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set out herein above and in an amount to be proven at trial.

125.    As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

126.    Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are, therefore, entitled to punitive damages to make an example of and to punish these Defendants in addition to actual damages.

COUNT XI

(Breach of Fiduciary Duty by All Defendants)

127.    Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

128.    Plaintiffs and Defendants have a fiduciary relationship in that the Plaintiffs purchased units from Defendants and signed agreements with Defendants whereby Defendants would, unsupervised by Plaintiffs, rent out and manage their units as hotel rooms as part of the Hilton Promenade Boutique Hotel and in return, Plaintiffs would receive income from the rental of the units.

129.     Defendants have breached their duty to Plaintiffs by among other things plead in this petition, engaging in competitive unit rentals with Plaintiffs without their prior knowledge and consent, not renting Plaintiffs units on a rotational basis and overcharging Plaintiffs for expenses.

130.     Defendants' actions have caused Plaintiffs harm in that they have been monetarily damaged by Defendants' breach of their fiduciary duty.

131.     As a result, Plaintiffs are entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

COUNT XII

(Violation of R.S.Mo.§448-002.106 et. seq.)

132.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

133.     Plaintiffs bring this claim pursuant to the Missouri Condominium Property Act, R.S.Mo. Chapter 448, specifically for violation of R.S.Mo. §448-002.106 et. seq. and seek relief under R.S.Mo. §448-004.117.

134.     Pursuant to R.S.Mo. §448.002-106.1, when selling a condominium unit to an individual on leased land, the declaration for the condominium project must state:

    (1) The recording data for the lease;
    (2) The date on which the lease is scheduled to expire;
    (3) A legally sufficient description of the real estate subject to the lease;
    (4) Any right of the unit owners to redeem the reversion and the manner whereby those rights may be exercised, or a statement that they do not have those rights;

51

(5) Any right of the unit owners to remove any improvements within a reasonable time after the expiration or termination of the lease, or a statement that they do not have those rights; and

(6) Any rights of the unit owners to renew the lease and the conditions of any renewal, or a statement that they do not have those rights.

135.　The declaration for the project which is the subject matter of this law suit, Hilton Promenade Boutique Hotel, does not comply with R.S.Mo.§448-002.106.1(4)-(6), in that those provisions are omitted from the declaration.

136.　Plaintiffs have been damaged by Defendant's failure to comply with R.S.Mo.§448.106.1 in that they were not made aware of their rights concerning the end of the 99 year land lease that the Defendants have with the City of Branson. Plaintiff's resale value, safety and security of their investment and certainty of the future have all been jeopardized by Defendants' failure to comply with the condominium statues.

137.　Plaintiffs are seeking appropriate relief of rescission of contract, damages and reasonable attorney's fees pursuant to R.S.Mo.§448.4-117.

## REQUEST AND PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

## PRAYER FOR RELIEF

Plaintiffs pray for judgment and relief on behalf of themselves, and on behalf of the Class, and against Defendants as follows:

1. For damages according to proof;

2. For interest on all damages as allowed by the laws of the State of Missouri according to proof at time of trial;

52

3. For a temporary restraining order, permanent or temporary prohibitory or mandatory injunction or a writ of prohibition or mandamus;

4. For the imposition of a civil penalty of not more than $2,500.00 for a single violation or $100,000.00 for multiple violations in a single proceeding or series of related proceedings;

5. For the issuance of a declaratory judgment;

6. For an order of rescission and restitution to investors;

7. For an order for an accounting;

8. For an order of punitive damages;

9. For the appointment of a receiver or conservator for the Defendants' assets;

10. For an order of payment of the divisions investigative costs;

11. For an order of such other relief as the court deems just;

12. For consideration paid for the Securities and interest at the legal rate of Missouri from the date of payment plus all expenses incurred, costs and reasonable attorney's fees, less the amount of income received on the Securities;

13. For damages for each Plaintiff who no longer owns the Securities in the amount that would be recoverable upon a tender less the value of the Securities when the Plaintiff disposed of it, plus interest at the legal rate of this State from the date of disposition of the Securities, costs and reasonable attorney's fees determined by the court. Tender requires only notice of willingness to exchange the Securities for the amount specified; and

14. For an order for costs and attorneys' fees as allowed by law.

Dated: May19, 2011

Case 6:11-cv-03190-DW   Document 1   Filed 05/26/11   Page 53 of 54

Respectfully Submitted,

**MORRISSEY LAW OFFICE, LLC**


By: ___/s Joseph A. Morrissey_____
Joseph A. Morrissey, MO Bar# 30202
Anna Morrissey MO Bar# 57756
114 W. Adams
Branson, Missouri 65616
Phone: (417)334-7581
Fax: (417)334-2071
ATTORNEYS FOR PLAINTIFFS

Respectfully Submitted,

**MORRISSEY LAW OFFICE, LLC**


By: ___/s Anna M. Morrissey_____
Joseph A. Morrissey, MO Bar# 30202
Anna Morrissey MO Bar# 57756
114 W. Adams
Branson, Missouri 65616
Phone: (417)334-7581
Fax: (417)334-2071
ATTORNEYS FOR PLAINTIFFS